IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02467-MEH

CAROL ANN COALE,

      Plaintiff,

v.

CAROLYN COLVIN, Commissioner of the Social Security Administration,

      Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

Plaintiff Carol Ann Coale appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for disability and disability insurance benefits ("DIB"), filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Jurisdiction is proper under 42 U.S.C. § 405(g). The parties have not requested oral argument, and the Court finds it would not materially assist the Court in its determination of this appeal. After consideration of the parties' briefs and the administrative record, the Court affirms in part and reverses in part the ALJ's decision, and remands the Commissioner's final order.[1]

---

[1]Pursuant to 28 U.S.C. § 636(c) and the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges, the parties consented to the jurisdiction of this Court to conduct all proceedings in this civil action. Docket #20.

## BACKGROUND

### I.      Procedural History

Plaintiff seeks judicial review of the Commissioner's decision denying her application for disability benefits filed on March 11, 2011.  [Administrative Record ("AR") 177-183]  After the application was initially denied on July 14, 2011 [AR 101-103], an Administrative Law Judge ("ALJ") scheduled a hearing upon the Plaintiff's request for October 25, 2012 [AR 104-110].  At the October hearing, the ALJ granted Plaintiff's request for a continuance to allow her attorney to review the case file. [AR 36-38]  The same ALJ conducted the continued hearing on February 1, 2013 at which the Plaintiff, her husband and a vocational expert testified.  [AR 39-73]  The ALJ issued a written ruling on February 25, 2013 finding Plaintiff was not disabled starting on November 15, 2010 because Plaintiff could perform her past jobs considering her age, education, work experience and residual functional capacity.  [AR 20-28]  The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's determination on July 8, 2014, making the SSA Commissioner's denial final for the purpose of judicial review [AR 1-5].  *See* 20 C.F.R. § 416.1481.  Plaintiff timely filed her complaint with this Court seeking review of the Commissioner's final decision.

### II.     Plaintiff's Alleged Conditions

Plaintiff was born on March 13, 1950; she was 60 years old when she filed her application for DIB on March 11, 2011.  [AR 251-254]  Plaintiff claims she became disabled on September 17, 2010 [AR 244] and reported that she was limited in her ability to work by two on-the-job accidents that left her "crippled" in both shoulders, a right shoulder injury, a left shoulder injury, and a back

injury.  [AR 198]  Plaintiff completed a "Pain Questionnaire" in tandem with her application, in which she described having "sharp pain [in her] left shoulder [and] aching pain [in her] right shoulder" that is "constant" and limits or prevents her from activities requiring the use of her shoulder joints.  [AR 221]  Plaintiff stated her pain was "slightly" relieved by acupuncture, physical therapy, showers, and hot baths.  [*Id.*]

The record indicates Plaintiff had "rotator cuff repair, biceps tenodesis, capsular release" on her right shoulder in July 2009. [AR 270]  Plaintiff's surgeon, Dan Guttman, M.D., indicated on November 19, 2009 that Plaintiff had a "setback" but was "doing much better" and was "back to work at restricted duty." [*Id.*] Plaintiff continued to see Dr. Guttman through April 12, 2010 at which time the doctor reviewed a functional capacity evaluation, found Plaintiff was "better overall with improved strength and less pain" but could not perform "her complete job duties," so he recommended she see another doctor for an impairment rating. [AR 263]

On July 21, 2010, Plaintiff presented to a worker's compensation provider complaining that a chair she was sitting in while on duty at work collapsed causing injuries to her back, neck and right shoulder. [AR 284-287] She was referred again to Dr. Guttman, who saw the Plaintiff on August 12, 2010; Plaintiff reported her belief that she re-injured the rotator cuff in her right shoulder. [AR 261] Dr. Guttman returned Plaintiff to restricted duty at work and ordered an MRI and renal blood tests. [*Id.*] The MRI performed on September 10, 2010 revealed no tear of the right rotator cuff.  [AR 290] Plaintiff attended physical therapy starting on September 20, 2010 but stopped after September 27, 2010. [AR 293-299] She reported to a worker's compensation nurse, Augustina Abbott, on October 20, 2010 that she had attended four therapy sessions, her back pain improved 80%, but her shoulder

pain improved only 10% and the MRI showed no rotator cuff tear. [AR 275]  Nurse Abbott counseled Plaintiff on November 3, 2010 that because the MRI was negative, she needed "to do more exercises to strengthen." [AR 273]

Plaintiff returned to physical therapy on November 11, 2010 saying she had been unable to attend "due to a busy schedule" but could "now concentrate on therapy and getting better." [AR 301] A record dated January 3, 2011 reveals the Plaintiff attended five therapy sessions and was discharged on December 10, 2010 because she was "moving out of town." [AR 300]

Plaintiff presented to Vicky Mathwig, M.D. on March 9, 2011 expressing her belief that she "tore [her] left rotator cuff"; the doctor ordered an x-ray and prescribed topical patches for the pain. [AR 302-303] The x-ray taken on April 25, 2011 revealed "degenerative changes" in her left shoulder. [AR 308]  At Plaintiff's request, Dr. Mathwig performed an intraarticular joint cortisone injection to reduce pain in the left shoulder. [AR 304-305] The doctor also referred Plaintiff to an orthopedist; Plaintiff presented on June 8, 2011 to Mark Luker, M.D. and reported transient relief in her left shoulder from the cortisone injection and Lidocaine patches, but increased pain with movement. [AR 306]  Dr. Luker diagnosed Plaintiff with left shoulder adhesive capsulitis and performed another intraarticular joint injection after which the Plaintiff reported 100% initial pain relief. [AR 306-307]

Plaintiff presented to Brett Barney, M.D., for a consultative examination on June 11, 2011. [AR 310-314]  Plaintiff reported her chief complaint as "bilateral shoulder pain" and told the doctor she had pain, limited range of motion, and difficulty sleeping. [AR 310] After a thorough examination, Dr. Barney assessed Plaintiff with degenerative joint disease in her right shoulder and

4

adhesive capulitis, severe impingement, and significant subacromial tenderness in her left shoulder. [AR 313] The doctor determined the Plaintiff was limited only as follows: she could lift and carry 10 pounds, she could neither crawl nor reach, and she could occasionally handle materials. [AR 313-314]

On November 3, 2011, Dr. Mathwig noted that Plaintiff was "not able to work with her current physical condition. [Physical therapy] is recommended for her [left] shoulder." [AR 331] Plaintiff saw Dr. Mathwig again on January 17, 2012 complaining of left shoulder pain saying that home exercises and injections gave her only short term relief. [AR 345] She also complained of joint pain in her fingers and elbow. [*Id.*] Days later, Dr. Mathwig noted that Plaintiff's tests for rheumatoid arthritis were normal. [AR 337-338] Plaintiff saw Dr. Mathwig again on August 10, 2012 complaining of insomnia from "shoulder pain," "hormonal problems," and "restless leg symptoms"; the doctor prescribed Temazepam and counseled Plaintiff on treatment of insomnia. [AR 347-348] When Plaintiff presented again on November 19, 2012 complaining of shoulder and joint pain, the doctor prescribed Tramadol and advised against driving. [AR 387-388]

**III.    Hearing Testimony**

On February 1, 2013, Plaintiff, her husband, James Coale, and vocational expert, Michael Wiseman testified at the hearing.  [AR 41-72]  Plaintiff testified that she could no longer perform casino work because she moved to Colorado; every part of her body that "hit the metal gate" when the chair collapsed is "arthritic and sore"; she could not type for very long or comb her hair because of her shoulders and elbow; she quit two casino jobs because she could no longer perform the required arm movements; she was "lucky" to get 2-3 hours of sleep due to the pain; most of her past

jobs included typing; her little finger on her right hand was becoming misshapen; she believed she had a rotator cuff tear in her left shoulder "but the MRIs are very expensive"; she was on her feet at the casino job and sitting down at the law firm; her hands would start shaking when she tried to type or write; her left shoulder pain started radiating down her arm and around her rib cage; her biggest problem with going back to work was sleep deprivation; and she could no longer ski, golf, bowl, or go boating, but has taken up karaoke.  [AR 43-58]

Plaintiff's husband testified that he needed to help Plaintiff with dressing, bathing, styling her hair, cooking and cleaning the house; Plaintiff was severely sleep-deprived and depressed; and she was no longer able to perform clerical tasks for his business. [AR 58-63]

The ALJ then turned to the vocational expert, Mr. Wiseman, who testified that Plaintiff could perform her previous jobs as hostess, card room supervisor, administrative admissions assistant, and manager according to the Dictionary of Occupational Titles ("DOT") with limitations to light exertional duties and no overhead work.  [AR 66] With the additional limitation of sedentary work, Plaintiff could perform the administrative admissions assistant and manager positions. [*Id.*] However, if the limitations were sedentary, no overhead work, and only occasional manipulative work, the Plaintiff could perform none of her past positions. [AR 67] If the Plaintiff needed to miss three or more days per month on a consistent basis or was limited to no reaching at all, then all of the positions would be eliminated.  [AR 67, 72]

The ALJ issued an unfavorable decision on February 25, 2013.  [AR 17-28]

## LEGAL STANDARDS

**I.      SSA's Five-Step Process for Determining Disability**

Here, the Court will review the ALJ's application of the five-step sequential evaluation process used to determine whether an adult claimant is "disabled" under Title II of the Social Security Act, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Step One determines whether the claimant is presently engaged in substantial gainful activity. If he is, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520. Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. §§ 404.1520(c). If the claimant is unable to show that her impairment(s) would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. *See* 20 C.F.R. 404.1520(c). Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. §§ 404.1520(d). If the impairment is not listed, she is not presumed to be conclusively disabled. Step Four then requires the claimant to show that her impairment(s) and assessed residual functional capacity ("RFC") prevent her from performing work that she has performed in the past. If the claimant is able to perform her previous work, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(e), (f). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps as discussed, the analysis

7

proceeds to Step Five where the SSA Commissioner has the burden to demonstrate that the claimant

has the RFC to perform other work in the national economy in view of his age, education and work

experience.  *See* 20 C.F.R. §§ 404.1520(g).

## II.    Standard of Review

This Court's review is limited to whether the final decision is supported by substantial

evidence in the record as a whole and whether the correct legal standards were applied.  *See*

*Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003); *see also White v. Barnhart*, 287 F.3d

903, 905 (10th Cir. 2001).  Thus, the function of the Court's review is "to determine whether the

findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom.

If they are so supported, they are conclusive upon the reviewing court and may not be disturbed."

*Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970); *see also Bradley v. Califano*, 573 F.2d

28, 31 (10th Cir. 1978).   "Substantial evidence is more than a scintilla, but less than a

preponderance; it is such evidence that a reasonable mind might accept to support the conclusion."

*Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S.

389, 401 (1971)).  The Court may not re-weigh the evidence nor substitute its judgment for that of

the ALJ.  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citing *Casias v. Secretary of*

*Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).   However, reversal may be

appropriate when the ALJ either applies an incorrect legal standard or fails to demonstrate reliance

on the correct legal standards.  *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## ALJ's RULING

The ALJ ruled that Plaintiff had not engaged in substantial gainful activity since the onset

date of her disability, November 15, 2010 (Step One).  [AR 22]  Further, the ALJ determined that

Plaintiff had the following severe impairment: bilateral shoulder arthritis (Step Two).  [*Id.*]  Next,

the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or

medically equaled a listed impairment deemed to be so severe as to preclude substantial gainful

employment (Step Three).  [AR 22-23]

      The ALJ then determined that Plaintiff had the RFC to perform "light work as defined by

20 C.F.R. 404.1567(b) except she cannot perform overhead work bilaterally."  [AR 23]  The ALJ

determined that although the medical "records plainly demonstrate that the claimant experiences

severe impairments that significantly limit her ability to perform work-related activities," the

medical "findings and observations illustrate that the claimant[ ] has retained the physical capacity

to perform work-related activities consistent with the undersigned's conclusions, not the claimant's

allegations of disability."  [AR 24-25] Moreover, the ALJ "noted inconsistencies in the claimant's

record" including descriptions of "daily activities which are not limited to the extent one would

expect, given the complaints of disabling symptoms and limitations."  [AR 25]

      The ALJ proceeded to determine the Plaintiff was capable of performing past relevant work

as a hostess, card room supervisor, admission assistant, and manager (Step Four).  [AR 27-28] As

a result, the ALJ concluded that Plaintiff was not disabled at Step Four of the sequential process and,

therefore, was not under a disability as defined by the SSA.  [AR 28]

      Plaintiff sought review of the ALJ's decision by the Appeals Council on March 19, 2013.

[AR 15]  On July 8, 2014, the Appeals Council notified Plaintiff that it had determined it had "no

reason" under the rules to review the decision and, thus, the ALJ's decision "is the final decision of

the Commissioner of Social Security." [AR 1-3]  Plaintiff timely filed her Complaint in this matter

on September 4, 2014.

## ISSUES ON APPEAL

On appeal, Plaintiff alleges the following errors: (1) the ALJ erred by rejecting the more

restrictive assessments by Dr. Barney and NP Abbott and his finding lacks support of substantial

evidence; and (2) the ALJ's credibility findings lack support of substantial evidence.

## ANALYSIS

The Court will address each of the Plaintiff's issues in turn.

I.    **ALJ's Rejection of Barney's and Abbott's Restrictive Assessments**

Plaintiff contends that the ALJ improperly gave little or no weight to the opinions of the

worker's compensation nurse practitioner, NP Abbott, and the consultative examining physician,

Dr. Barney, and rejected their assessments while accepting the findings of worker's compensation

orthopedist, Dr. Guttman, and consultative non-examiner, Dr. Ketelhohn.  Defendant counters the

ALJ assigned proper weights to these doctors' opinions.

With respect to Dr. Barney, the ALJ found:

> In determining the claimant's residual functional capacity, the undersigned
> considered the conclusions of Bret Barney, MD, a consulting physician who
> performed a physical examination in June 2011 on behalf of Colorado's Disability
> Determination Service. Based on a physical examination, Dr. Barney concluded the
> claimant could lift less than 10 pounds occasionally and frequently due to significant
> limitations in shoulder range of motion and subacromial tenderness. Dr. Barney
> concluded there would he postural limitations, namely no crawling secondary to the
> significant limitations in the shoulder range of motion. Finally, Dr. Barney concluded
> the claimant had manipulative limitations including no reaching and only occasional
> handling secondary to marked limitations in the bilateral shoulder range of motion
> and significant impingement and even some weakness in the left shoulder. The

undersigned afforded these conclusions little weight because they are not consistent with the consultative physical examination.  For example, motor strength was 5/5 throughout with the exception of the left abductor strength which was 4+/5.  Range of motion on abduction in the left shoulder was 0-70 degrees and 0-110 in the right shoulder.

[AR 25-26 (citations omitted).]

While "[t]he opinion of an examining physician or psychologist is generally entitled to less weight than that of a treating physician or psychologist, and the opinion of an physician who has never seen the claimant is generally entitled to the least weight of all" (*Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir.2004)), the SSA will consider all available medical evidence, including objective medical information and opinions from acceptable medical sources.  06-03p, 2006 WL 2329939, at *1 (SSA Aug. 9, 2006).   According to SSA regulations, in deciding the weight given to any medical opinion, an ALJ is to consider the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003); *See* 20 C.F.R. § 404.1527(d). In applying these factors, "an ALJ must 'give good reasons in the notice of determination or decision' for the weight he ultimatel[y] assign[s] the opinion." *Id.* at 1300 (quoting 20 C.F.R. § 404.1527(d)(2)); *see also* SSR 96-2p, 1996 WL 374188, at *5; *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).  Without these findings, remand is required. *Watkins*, 350 F.3d at 1300-01; *accord Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  Finally, if the ALJ rejects the opinion

11

entirely, he must give "specific, legitimate reasons" for doing so.  *Watkins*, 350 F.3d at 1301.

The only reason the ALJ gave for assigning little weight to Dr. Barney's conclusions regarding Plaintiff's limitations is "because they are not consistent with the consultative physical examination."  The ALJ points to Dr. Barney's measurements of Plaintiff's motor strength and range of motion in her shoulders. [AR 25-26]  However, the ALJ fails to explain why he believes such measurements demonstrate inconsistencies with Dr. Barney's opined limitations.  In fact, the ALJ's summary conclusion appears simply to reflect his own lay opinion of Dr. Barney's findings.  *See Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004) (an ALJ may not substitute his lay opinion on the effect of medical findings for that of a medical professional); *see also McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("[A]n ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*.") (emphasis in original).  The Court finds the ALJ did not give good reasons for the weight he assigned Dr. Barney's opinion.

With respect to NP Abbott, the ALJ found:

> The record contains statements from one of the claimant's treating family[2] nurse practitioner[s] releasing the claimant to work with modified activity of no lifting over 15 pounds and no pushing or pulling over 35 pounds of force in November 2010. In addition, in October 2010 the family nurse practitioner restricted the claimant to no lifting over 10 pounds and no lifting over 5 pounds with the right arm/hand and no

---

[2]To the extent the ALJ used the term, "family," to describe NP Abbott as something other than a health care provider for a worker's compensation clinic, the Court disagrees with the ALJ's characterization.  NP Abbott was employed by CompCare New Mexico, Inc., self-described as "occupational healthcare services" and the clinic to which the Plaintiff presented immediately following an on-the-job injury. [*See* AR 284]

pushing/pulling over 10 pounds in July and August 2010 with no reaching above shoulder with the right arm. The undersigned afforded some weight because the restrictions are somewhat consistent with the musculoskeletal exam during those times which revealed diffuse pain on palpation. In addition, a MRI of September 2020 [sic] showed very mild glenohumeral degenerative joint disease. However, greater weight is not afforded because the [sic] although the nurse practitioner has a treating relationship with the claimant, the record reveals the treatment history is quite brief[;] therefore the nurse practitioner did not obtain a longitudinal picture of the claimant's impairments in relation to the assigned limitations and restrictions. It is noted that the family nurse practitioner is not an "acceptable medical source" (20 CFR 404.1513(a) and 416.913(a)).

[AR 26 (citations to record omitted).]

The ALJ is correct that a nurse practitioner is not considered an "acceptable medical source" by the SSA. *See* Social Security Ruling 06-03p, 2006 WL 2329939 at *1 (SSA Aug. 9, 2006). As such, NP Abbott cannot provide the SSA a medical opinion, *see* 20 C.F.R. § 404.1527(a)(2), nor will she be considered a treating source whose opinion must be evaluated to determine whether it is entitled to controlling weight. *See* 20 C.F.R. § 404.913(a); *see also Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007). Rather, the SSA "may use evidence from 'other sources' ... to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." Social Security Ruling 06-03p, 2006 WL 2329939, at *2. Accordingly, the opinions of "other" medical sources such as NP Abbott must be considered and addressed, applying the same factors as are generally used to assess acceptable medical source opinions. Social Security Ruling 06-03p, 2006 WL 2329939, at *3.

Among these relevant considerations are the length of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(c)(2)(i). Here, the ALJ noted "the record reveals the treatment history is quite brief[;] therefore the nurse practitioner did not obtain a longitudinal

picture of the claimant's impairments in relation to the assigned limitations and restrictions." [AR 26] However, given that the ALJ gave the same weight to the opinion of a state agency physician, Dr. Ketelhohn, who never examined Plaintiff but merely reviewed her medical records, this reason is not persuasive. *See Gonzales v. Colvin*, 69 F. Supp. 3d 1163, 1169 (D. Colo. 2014) (citing *Davis v. Astrue*, 2010 WL 3835828, at *4 (D. Colo. Sept. 23, 2010)). Moreover, NP Abbott saw Plaintiff five times over the course of four months. [AR 272-287] Absent any indication that the nature of the Plaintiff's treatment was inconsistent with her frequency of visits to a worker's compensation nurse practitioner, a negative inference from this factor is not supported. *See* 20 C.F.R. § 404.1502 ("we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)").

Furthermore, the Court notes that the ALJ afforded the most weight to Plaintiff's worker's compensation orthopedist, Dr. Guttman, whose opinion the ALJ assigned "significant weight." [AR 26] The ALJ cited Dr. Guttman's findings that Plaintiff was limited to lifting no "more than 20 pounds at the side and nothing overhead" and found they were entitled to significant weight

> because the restrictions are generally consistent with the objective evidence. For example, the record reflects that during that time the claimant had some scapular dyskinesia and posterior contracture. Strength of rotator cuff and biceps was good, but she had pain in the impingement positions. It is noted that work restrictions were status post rotator cuff repair and re-injury of the cuff in July 2010.

[*Id.*] Although the ALJ cites generally to "Exhibit 2F," most of the records contained within that exhibit were dated ***prior*** to Plaintiff's "re-injury" in July 2010 and the limitations to which the ALJ

refers appear in a November 2009 status report and an April 12, 2010 summary. [AR 263, 271] Dr. Guttman did see the Plaintiff after her July 2010 "re-injury"; however, a record from August 12, 2010 reveals Dr. Guttman returned Plaintiff to work restricted to no lifting at all with her right arm. [AR 262] Dr. Guttman saw Plaintiff again on October 19, 2010 to review MRI results showing no "re-tear" in her right rotator cuff; the doctor noted Plaintiff "could return to restricted work duty," but did not specify the restrictions. [AR 260, 288]

Because the ALJ was incorrect in finding Dr. Guttman's work restrictions were the same both before and after the July 2010 injury, the Court finds the ALJ did not give good, legitimate reasons for according Dr. Guttman's opinion "significant" weight, which was more than he assigned any other medical provider. And, since the reasons he gave for crediting Dr. Guttman's opinion are not supported in the record, the ALJ's conclusion does not constitute substantial evidence.

Accordingly, the Court will reverse the decision of the ALJ and remand the matter to the Commissioner for further consideration and explanation of the medical opinions in this case.

II.     **ALJ's Credibility Findings**

Plaintiff argues that the ALJ's sole reason for discrediting the Plaintiff's and her husband's testimony – that Plaintiff's "daily activities are not limited to the extent one would expect given the complaints of disabling symptoms and limitations" (Opening Brief, docket #12 at 16) – is not supported by substantial evidence. Defendant counters that the ALJ provided several legitimate reasons for discounting the testimony.

The ALJ described his findings of the Plaintiff's and her husband's testimony as follows:

In assessing the credibility of the claimant's statements regarding his [sic] symptoms

and limitations, in accordance with the factors described in 20 CFR 404.1529(c)(3)/ 416.929(c)(3) and Social Security Ruling 96-7p, the undersigned noted inconsistencies in the claimant's record which also leads to a conclusion that the claimant's allegations of disabling symptoms and limitations cannot be accepted, and that the residual functional capacity finding in this case is justified. For example, the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. For example, the claimant reported that she is able to prepare her own meals [and] perform household chores including laundry and vacuuming. She is able to drive, shop in stores and by computer, and able to manage money.

\*\*\*

In addition to the evidence from the above physicians, the undersigned has considered evidence from other sources, as defined in 20 CFR 404.1513(d) and 416.913(d), specifically hearing testimony from the claimant's husband, James (aka Lane) Coale ("Mr. Coale"), to determine the severity of the claimant's impairments and how it affects the claimant's ability to function. Mr. Coale testified that he assists the claimant with personal care tasks (getting in/out bathtub, washing her back, fastening her bra, getting her boots on/off). He testified that he does the majority of the cooking and household chores. He testified that his wife cannot lift more than a gallon of milk and can no longer grocery shop. He reported that [he] has to assist his wife in getting [in] their truck because she is not able to pull herself into the truck. Finally, Mr. Coale testified that the claimant is extremely sleep deprived secondary to pain (Hearing Testimony). The undersigned afforded some weight to Mr. Coale's testimony given his relationship and daily interaction with the claimant; however his testimony is inconsistent with the claimant's described daily activities in the Function Report (Form SSA-3373-BK), which renders it less persuasive.

[AR 25, 27]

Once objective medical evidence shows that a claimant has an impairment that can reasonably be expected to produce symptoms, the ALJ is required to consider the claimant's assertions of the symptoms and decide whether to believe them. *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993). "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir.1990); *see also Cowan v. Astrue*,

552 F.3d 1182, 1190 (10th Cir. 2008). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted).

Here, the ALJ relied specifically on the Function Report completed by the Plaintiff on April 17, 2011 to discount the credibility of both the Plaintiff's and her husband's testimony at the February 1, 2013 hearing. The Court finds the function report itself, completed nearly two years previously, does not consist of substantial evidence on which the ALJ may solely base his credibility findings. *See Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987) (to find the ALJ's decision supported by substantial evidence, the record must include sufficient relevant evidence that a reasonable person might deem adequate to support the ultimate conclusion).

However, Defendant argues that the ALJ relied on other evidence in the record to support his credibility findings. The Court agrees. The ALJ thoroughly reviewed the objective medical evidence, as well as the type and effectiveness of the treatment Plaintiff received, before concluding, "These findings and observations illustrate that the claimant's [sic] has retained the physical capacity to perform work-related activities consistent with the undersigned's conclusions, not the claimant's allegations of disability." [*See* AR 24-25] Because the ALJ's reasons for discounting the Plaintiff's and her husband's credibility are supported by the record, his determinations are entitled to substantial deference. *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001); *see also Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

## CONCLUSION

In sum, the Court finds the ALJ properly considered and analyzed the Plaintiff's and her

husband's credibility.  However, the Court also finds the ALJ failed to give good reasons for the weight he assigned Dr. Barney's, Nurse Abbott's, and Dr. Guttman's opinions in contravention of *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) and its progeny.  In this regard, the ALJ's decision is reversed and remanded to the Commissioner for further explanation and consideration.

Therefore, the decision of the ALJ that Plaintiff Carol Ann Coale was not disabled is **affirmed in part, reversed in part, and remanded** to the Commissioner for further consideration and/or clarification in accordance with this order.

Dated at Denver, Colorado this 1st day of September, 2015.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge